This is Collins v. Clarke, No. 14-7082. Mr. Hargett, you're first up. Good to have you here. Thank you, Your Honor. Good morning, and may it please the Court. My name is David Hargett, along with co-counsel James Maloney. We represent Mr. Collins in the dismissal of his habeas case. This is a case arising out of the state court in Virginia, where Mr. Collins was a licensed professional, but out of the state of North Carolina. He then proceeded into Virginia to apprehend a fugitive, and then that's where the problem… He was a bail bondsman in North Carolina? I'm sorry, Your Honor. He was a bail bondsman, wasn't he? Yes, Your Honor, and duly licensed. As a matter of fact, he was the one who wrote… By the state of North Carolina? By the state of North Carolina, and he was the one who wrote the bond for the fugitive, the one who jumped and came to Virginia. So he came to Virginia to get him? He came to Virginia to get him out. And he was going to take him back to North Carolina? That's correct. And instead, he got got. He did. He got got. He ran into the wrong fella, didn't he? Yes, he did. Unfortunately, the person he apprehended or attempted to apprehend was a cousin of the jumper. They were attending a funeral. That's how he knew that he could find him there. And unfortunately, though, the gentleman that was attempted to be apprehended was a deputy sheriff out of Alexandria. So that's when the problems occurred. So I think that, you know, this case, obviously, we have a difficulty here because we're in federal court arguing a state case. But there's a lot of federal… It happens all the time. Exactly. Don't worry about us. There's a lot of federal law here that's applicable. And we're really talking about the common law right that was decided, according to our view, that could be… You want habeas corpus or something to get your conviction set aside under ineffective counsel. That's correct. You have a constitutional claim for ineffective counsel. Correct. The man has already served his sentence, right? At this point, he had. How does it get to habeas? Well… Why, in a quorum nobis or something? Well, he was in custody at the time we filed the original federal habeas petition, Your Honor. Maybe it's moot. Under federal law, for custody purposes, it would not be moot if he was actually in custody at the time it was filed. It doesn't matter that he was then released thereafter. And, of course, he is still under conditions such as a suspended sentence as well as all the consequences that come along with being a convicted felon. Specifically, prohibiting him the ability to engage in his employment. But anyway, so the question is… Why is that so? Why does it prohibit his employment? Is that a condition or what? Potentially, if you're a convicted felon, you have a hard time getting a good job. And, specifically, jobs that require licenses. But you said it prohibited him from, and then you said potentially. So, he's not available now. He can't do that. That evidence is in the record, Your Honor. I know, but you just said that. You said keeping him from whatever. I didn't ask you why. You said potentially. My understanding is that it's certainly causing problems in North Carolina. Okay. But Amos Corpus goes against the warden to get somebody to produce the body to get somebody out of the penitentiary. And Mr. Clark is the warden, isn't he? That's correct. He's actually the director of the Department of Corrections. But your guy's not in it. He's not in the Department of Corrections. Mr. Clark can't produce him. That's correct, but at the time… We issue a writ for your favor and Mr. Clark says, I don't have him. Yes, Your Honor. But at the time that he was… There are other forms of relief. I said quorum nobis. Quorum nobis is not really available in Virginia anymore. You're not asking for it in Virginia. You're in the federal court. That's correct. That's correct. Anyway. Maybe it's not maybe quorum nobis. I don't want to suggest you have some other remedy. Anyway, you framed it the way you want to frame it. I think the law is on our side that he was in custody for federal purposes and that the warden is the proper respondent under Virginia law. He certainly is even though he's no longer in custody. Even though Mr. Clark doesn't have him anymore. He's still the proper respondent. But he's under suspended sentence where if he were to revoke, he would then go to the Department of Corrections. And there's a Virginia statute specifically on point that talks about him, the director of the Department of Corrections, being a proper respondent to the habeas petition, Your Honor. But this ineffective counsel issue, he had to retain lawyer, right? He hired a lawyer? That's correct. So he's blaming his retained lawyer, claiming he's constitutionally defecting for what? For not using three words. Not using three words. Not using three words. He didn't say it violated due process. He argued everything else, Your Honor. And that's where the problem becomes because the state court and then the district court here. We've got to give a lot of deference to the state court proceedings and their AEDPA. That's what applies here, right? That's correct. It's an AEDPA deference situation. We give lots of deference to the state court proceedings on the facts and their interpretation or application of federal law. But their rationale was unreasonable under Strickland. The problem you had was you were like ships passing in the night. Your guy said the witness was lying. He didn't come in to admit to what he did. That's correct. He came in and said the witness was all lying. I didn't do anything wrong. And that would be all well and good, except for the fact that for 10, 11, 12 pages in the transcript, defense counsel argued repeatedly if you reject the defense evidence and accept the commonwealth's evidence, then Mr. Collins was acting under the color of law. That's what he argued repeatedly because this statute does not specifically say that if you're an out-of-state but licensed, you must also comply with the Virginia law. So it wasn't clear to anyone up until the point that the Virginia Supreme Court ultimately decided that they had abrogated the federal common law. Well, why wouldn't the federal common law, if it actually existed from back in 1870, it was abrogated probably when the Peary case came down in 1938. Well, this court, interestingly enough, Your Honor, in Keir v. Hilton, which was cited by opposing counsel but not by us, and it was also cited in the lower court, it specifically says that a bail bondsman has the right to go into another state and collect his fugitive, irrespective of the laws of that other state. Keir v. Hilton actually had to do with whether you have the right to go into another country and get your guy back. And they said that's probably taken into account. Is that the holding of the case? Yes, that you can't go into another country. If it's a holding rather than victor musings or something? Well, I can tell you, you know, I would call it a pretty clear indication. The district court and the AG's office will argue that, what was the words they used, express considerable skepticism as to whether that was still the law. But the only skepticism that is in that case, if you look at footnote number two, what footnote number two says is we proceed on the assumption that tailored decision, which has never been overruled, remains the law. And then they go on and say, but we know that it's been a long time since 1872. That's the skepticism, that it's been a really long time. Of course it's been a really long time. We're talking about federal common law. And old law is the best law. You know, I think you ought to get off that point if you want to score anything. The court's smart enough to indicate still the law, but we know that if that were actually being discussed, that it may not be. That's all that makes. Do you really think that's a strong point, for you to argue that they noted 1872 was a long time ago? Do you think that's a strong point of your argument? That's the only skepticism that they uttered in that opinion, Your Honor. That suggests, I would suggest to you if you read cases, that just means they're noting. We're accepting it without deciding it. And we just know, to me that reads, if we were to get into it, it's not all that certain of what you're saying. I don't know why you're even saying that, because I don't know why you think that's valid to you, a valid point for your argument. But if you want to take your time, do it yourself. Well, I see that I'm out of time. May I address that real quickly? No, you have time to come back. You can take some of your buddy's time if you want to. I'll let Mr. Maloney tackle this. All right. Mr. Maloney? Good morning, Judge. James Maloney. I didn't mean to call you buddy, colleague. Judge, I like to think maybe we are. Judge, sort of following up on that issue, and certainly I'd be happy to address any more of it, what I think is important to note is that this Court struggled mightily with the silence of the Virginia statute and the issue of whether or not it abrogated Taylor v. Taylor. I think the Court, for the purposes of the argument, did accept as law the bondsman's right to go into another state to obtain his bailee under Taylor v. Taylor. And the Court said, in fact, specifically on the record on, I believe, page 209 of the appendix, and again on page 191 and 192 of the appendix, indicated that it was struggling with that very issue. In our opinion... You think the net result is what? What do you think? Your argument is to what point? My argument is to the point that it was ineffective for counsel not to have raised... Based on what? Based on the fact that the judge specifically says to him, acknowledges that this statute is silent. And if the statute is silent and doesn't specifically revoke what is existing common law, which the Court recognized it wasn't... What if we were to say, it's a reasonable interpretation to look at, that now, looking at it now, it did change the common law? Don't you lose on the prejudice standards? I don't think so, Judge. Why not? Because Mr. Collins is prejudiced because he wasn't... Then it wouldn't make any difference if he'd raised it or not. If we were to look at it now and decide that it did in fact abrogate what you say the law was, then is there any prejudice? There is, Judge, because I think even if we concede that the statute does abrogate the law, it doesn't sufficiently put Mr. Collins on notice because it is so ambiguous. And because it hasn't been determined by the highest court in the state, Virginia Supreme Court... You're talking about ineffective assistance of counsel as to raising it, as to raising it, that there's no prejudice. You can still make the due process separate from that, can't you? Right, but I think that that is, therein lies the prejudice, is that he was ineffective in not saying, well, Judge, if you were making that determination that this abrogates the federal law, then you are the first one to do that, and therefore to then apply it retroactively that Mr. Collins violates his right to due process. He clearly wasn't on notice. The judge in two separate hearings, in the second of two hearings, after he says to counsel, I understand that color of law is an issue here. In the second one, after hearing the commonwealth's argument, he says, I'm struggling with the commonwealth's argument, too. I don't know that I necessarily subscribe to that. Are you saying that the silence of the statute leaves open the federal right, and the judge ultimately decides... What did we grant certificate of appealability on? What does this court? We granted a certificate of appealability here. On whether or not the retroactive, whether or not counsel's failure to raise the issue of due process was ineffective. So it's ineffective assistance of counsel is the issue. It's a Sixth Amendment claim that you're coming up here with. Yes, sir. We give a lot of deference to the lawyers, particularly lawyers who have done criminal proceedings. They do, don't we? Absolutely. Yes, sir. And I would agree the standard is unreasonable. However, in this case, it is unreasonable. In this case, trial court all but invited it. Trial court all but raised the issue itself. Trial court said, color of law is an issue here. Trial court said, I'm struggling with this issue. Trial court recognized that it's the silence of the issue, i.e. ambiguity, where the trial court essentially says, it is kind of ambiguous, but I'm going to find that it abrogates our law. At that point, under those circumstances, trial counsel should have said, well, Judge, if it's ambiguous, then it doesn't fairly put him on notice. And if it doesn't fairly put him on notice, he doesn't have due process. And if you're the first one that's deciding that it abrogates this, remember, within, I think, 18 months, North Carolina, who has almost an identical statute, their attorney general comes out with an opinion that says, it doesn't affect the right of an out-of-state bondsman to come into our state just for the purposes of picking up. Remember, the argument here was that I'm not really acting as a bail bondsman. I'm not issuing bails. I'm not conducting business in Virginia. All I'm doing is getting my bailee from Virginia because he ran there. And I thought that the point raised is a good one in the brief. If you try to abduct the wrong person, you can get prosecuted, right? That's certainly what happened in this case, Judge. But I think that's a separate issue, although one that the judge raised as well. If the court doesn't have any more questions on that, I've got a few moments left. I'd like to move on to the second issue. This is that counsel was ineffective for not raising the issue that the defendant lacked intent, specifically because any intent that he had to deprive of liberty was incidental to an underlying offense, that offense being the violation of the bail bond statute. I would just mention to the court that in the judge's mind, there wasn't a whole lot of dispute on the facts. I understand the court's comment previously about the court soundly rejected the defendant's argument and I'll adopt Mr. Hargett's argument about we're accepting everything that the Commonwealth said. But up to that point, the facts are largely not in dispute that he was a licensed bail bondsman, that he did come into Virginia solely for the purpose of getting his bailee, that he first went to the sheriff's office and he asked the sheriff for assistance. They said, well, we can't give you any assistance, but this is how you do it. That he asked to confirm that the bailee was in fact still a fugitive, that implicitly on page 98 of the appendix, the testimony from the sheriff that he essentially authorized said, yeah, you can go ahead and do that. It was only then that he goes to apprehend who it turns out is the wrong individual. But when he does that, Judge, he does that for the limited purpose... He said he wasn't going to help him. The sheriff did. That's absolutely right. So you're saying that's circumstantial evidence we've been talking about here this morning that he said you can go ahead and do it. Well, except we have a little bit more than that. I'm not going to help you. So you're saying that's approval. Well, his testimony was a little bit more than that. His testimony to the question, so you basically told him he could go do it. His answer was yes. So I agree, Judge, it's a little bit implicit. Could you stop rocking back and forth? Sorry, sir. I'm having trouble following you back and forth. Thank you. Absolutely. I apologize. I know you're animated because you're interested, and I appreciate that. He thinks he's got a jury up there. I think he does. Petite. They would be dizzy, too. The other factual finding, that there was none other, is that the individual, albeit the wrong individual, was detained only as long as it took to establish that he wasn't the right person. He was confronted with what the court found was a firearm and some aggressive language, and that there was an attempt made to move him towards the truck, but that he was repeatedly called by the name of this other individual that when he was asked for ID and produced ID and determined he wasn't, that he lets him go. So there's no question he doesn't have any other intent to do any other. I was a little concerned with the district court's ruling that the justification or the explanation or the reasoning was completely wrong because any individual who did an abduction could simply say, well, I'm an unlicensed bail bonding agent and that's all I was trying to do. And that's not really the case. Obviously, there would have to be a factual basis for that. And I would submit that in any other case where there was this type of factual history that it was, in fact, Mr. Collins' only intent, that, yeah, all of those individuals should succeed with the same argument. The fact is, though, that this is an exceedingly rare circumstance. And I'm out of time. Thank you. Honor's free. Thank you very much, Mr. Maloney. Mr. Jeffrey? Good morning, Your Honor. May it please the Court. Donald Jeffrey from the Attorney General's Office on behalf of the Director and the Attorney General of Virginia. To get to the jurisdictional issue, Judge King, I would agree with Mr. Hargett, and I can't cite the case to you because I didn't realize it would be an issue, but my reckless understanding... I'm not saying it is an issue. I just thought he was out of jail. I want to see what his theory was. What's not apparent on this record, I don't think. My understanding of the law is consistent with what Mr. Hargett... I say it's not apparent on this record what his real status was and what your all's claims were. Oh, correct. My understanding is he has been released from custody. It is also consistent with what Mr. Hargett told you that... And I can't give you a case site, but I think there's actually a Fourth Circuit precedent that says if you're in custody when you file... And clearly, Mr. Collins was in this case. I don't think there's... I'm wondering why you're leading your argument with that answer. Why are you leading your... Why are you opening your argument with that, with this comment? I wanted to answer the jurisdictional question because it seemed to be a concern. Do you think there's a jurisdictional concern? Do you have any concern about jurisdiction in this case? No. I would have raised it if I did, Your Honor, frankly. Well, Judge King could ask you if he has a concern. I'm sorry? Judge King is completely confident to raise that question with you if he has that concern for you. Yes, sir. I just don't understand why you get up... They've made a bunch of arguments why you should lose, and it's interesting to me that you start off with going, they're right, and if... Judge King asked the question, he got his answers, he's not satisfied, he can ask you about it. Okay. I'll move on. Thank you. It was interesting to me, you would get up and argue why they're wrong, not why they're right. But it's up to you. Okay. Thank you. Go right ahead. The court has already alluded to the deference that's accorded to trial counsel, and I won't reiterate this over and over. Obviously, the court is also familiar with ADPA, which is a doubly deferential standard. What you have here, as I've argued on brief, and someone on the panel used the term two ships that passed in the night, there is case law from this court in both directions. Trial counsel is not ineffective for failing to raise inconsistent defenses. Trial counsel is not ineffective for doing it under certain circumstances. And I cited those cases to you. I think what we take from that is, this is the quintessential type of tactical decision that courts, and particularly under the deferential ADPA standard, should not be second-guessing. In this particular case... Did that cover both your ineffective assistance claims, just the first one? That's the first one, Your Honor. The tactical decision. Correct. It is that, essentially, and I understand what counsel has argued, and I think at first blush it's a compelling argument, but I think it's foreclosed by this court's fairly recent opinion in Mason, which I cited in the brief. He did argue in the alternative that there was this common law rule that hadn't been rescinded. So there was an alternative argument. He did not make the related argument that essentially was, it's unforeseeable under Bowie. But, again, if you look at Mason, Mason was a very similar, it was a Fourth Amendment argument was the one that was actually made. There was a selective racial enforcement that also had to do with the stop. The court said you can set priorities even if the defenses aren't mutually exclusive. Those types of priorities, as a matter of judgment, can be set. I would also say to you, under the facts of this case, I would point you to Bowie because the facts of Bowie are essentially, it's a trespassing situation in South Carolina. This is Jim Crow era, I think, is when the case came out. And a couple of the things that you had going on there, you did not have in that case clear statutes. And, in fact, the statute itself that the government was relying on did not clearly prescribe the conduct. There was an interpretation of the appellate courts that said, you also violate this by failing to leave when asked to be so, it's a trespass statute. And that wasn't clear, according to the U.S. Supreme Court, on the face of the statute. So I think that's distinguishable from this case because you're dealing with, in our case, two different statutes, one of which is the abduction statute, which essentially says if you snatch somebody the way that happened here, absent a justification or excuse, that you've violated the statute. The conduct that's prescribed is very clear in terms of abduction, and I don't think that statute facially is problematic whatsoever. As far as the bail bonding statutes and the bail recovery agent statutes, those also required licensure. And I think certainly given those facts, a reasonable attorney could have chosen to forego that type of due process argument and focus on, first, my client's the one telling the truth, and second, the common law argument that was actually made. There's not that additional level of foreseeability. And that's, of course, the Virginia Supreme Court, when it decided this, went strictly down the inconsistent defense, which, again, I would say, not ineffective for arguing or failing to argue. I didn't do it, but if I did, I wasn't on notice that this was prescribed. And that's the crux of the way the state court decided it. There are a number of other issues in this case, and I won't belabor case after case site, but I agree with, I guess it was you, Judge Shedd, that was talking about Keir. I don't read that footnote in Keir the same way. In fact, the district court read it differently. The district court said that this court in 82-83, when Keir was decided, expressed skepticism. That's how the court read it. My read of it was the same as this court's and the district court's, that there was some skepticism. My point of that comment or question was just to say, I think a lawyer needs to be very careful about over-reading a footnote or a comment, especially when the comment, the court doesn't need to say 1872 was a long time ago to establish the fact that 1872 was a long time ago. They do that for a purpose of saying, we accept it, but we do know it was a long time ago, which clearly indicates, I think, that we're just accepting it. We have some misgivings, and we just leave it where it is for right now. Because we take the stance that we try not to address things if we don't have to, basically. Two-fold. Apropos of the comment you made to me a moment ago, Your Honor, courts do, and there's, I think, U.S. Supreme Court cases that talk about this. We generally let the parties frame the issue. They know what's best. Apparently, in that case, neither party chose to challenge the notion that Taylor v. And I suspect that's what happened. In fact, I think the court may actually say that's what happened. So what do you think that does for you, though? Well, I think a whole lot of things, because this court, because, again, remember the prism of a reasonable attorney looking at this, and not to mention, again, not to belabor the point, the additional layer of deference under the ADA. But I think even if you're looking at this de novo, you're looking at that, and you're going, okay, the Fourth Circuit said this. They're a little concerned that that's the law. And I think, as I pointed out in my brief, Taylor is a complicated case to read, but I think if you actually read the summary of what Taylor is actually about, it's certainly not unreasonable, as a number of courts have said, to find that that language about bail bondsmen in Taylor itself is actually dicta, and a number of courts have said that. So that's another thing in the framework that you're dealing with as an attorney, trying to decide whether to raise this argument or not. Excuse me. The Sixth Circuit in Lund, that was probably the case that was cited the most throughout this litigation, essentially said, this doesn't give you unfettered right to go in and violate the laws of other states, so you're dealing with that issue as well. So I think all those things lead sort of inexorably, and I appreciate the comment somebody made about how do you show prejudice, but it certainly, under the first prong, the objective reasonableness of choosing to forego that defense, there's a lot of things stacked against you. Not just the intuitive thing that the state court latched on to about how its inconsistent defenses is problematic, but also just the body of law that's growing, going back to this case's decision here and any number of states. Those are all cited in the brief. In fact, I think at, particularly, it had come up in a similar context to what you have in this court, in the Supreme Court of Kentucky, in a case called Walker, cited on brief, Shadfold, South Carolina. Again, these courts are all talking about this being victious. So a reasonable attorney reviewing the status of the law under those circumstances could choose to forego that. Also, as I cited on brief, I cited Rogers, which talks about changes in the common law and foreseeability. And the U.S. Supreme Court said there that, yes, you can look at what's going on in the other 49 states when you're talking about buoy foreseeability. So that's yet another issue. And, in fact, here I would say the tactical basis for not pursuing that is probably even stronger than it would be under the Rogers situation, because basically Rogers was solely a judicial creation with respect to the Now, to be perfectly candid, there is a line in Rogers that says it's not entirely clear how embedded this was in this common law, but it also focused on the evolving trends in the law outside the jurisdiction and made a point of, while we don't expect everybody to look at all 50 states, certainly that is something that informs the analysis as to whether it's foreseeable. And, again, remembering that we're only looking at what a reasonable attorney would do with the information. So you have all those things. And for all those reasons, I don't think that they've met the standard of showing objectively unreasonable conduct on behalf of the lawyer who decided to forego this claim. If the court doesn't have any other questions on that claim, I'll briefly touch on the other one. My opponent hasn't hit on it yet. And I would simply say to you that, consistent with this court's case law, when a Sixth Amendment issue is decided by a state court solely applying interpretations of its state statutes, clearly this claim was framed both in state court and in federal court as not being a double jeopardy claim. The Supreme Court of Virginia has essentially said, you can be convicted of both. This is not a problem. One was the class three misdemeanor. And I'll point out, too, the word intent has been thrown around a lot. The misdemeanor statute is a strict liability statute. So there really wasn't any intent necessary under that statute. Clearly, you could act as a bail recovery agent, try to act as a bail recovery agent, and do things that transcend what happened here. It's not incidental. The abduction, this actually was a completed abduction under Virginia law, but it was convicted as an attempt, I guess because they didn't get him into the van. But strictly speaking, it probably is completed under Virginia law. So the state court has decided that. This court has talked about the immense deference you give to Strickland-type claims where they're decided based on that type of statutory interpretation by the state court. And I don't really have a whole lot to add on that. I think that particular claim is pretty straightforward. If there's any other questions I can answer for the court, I'll be happy to try to do that. And I apologize for the digression about the jurisdictional issue. No, no, no. You had time left over, so it worked. When I see something that I think is threshold that somebody's asking about, I'll be happy to try to address that, Your Honor. Okay. Thank you. Appreciate it, Mr. Jeffrey. Thank you, sir. Mr. Hargett. Thank you, Your Honor. I think this case boils down to whether this was a tactical decision. And I think it's wrong to call it a tactical decision. There's been discussion about whether it was reasonable for counsel to make the strategic decision not to make this additional argument. Well, that completely ignores the record in this case. That's simply not what happened. And Strickland tells us that we are to look at the cases under the totality of What did he say? He argued repeatedly. Did y'all have a hearing or anything and preserve his position on this? Oh, I'm sorry. What did he say about it? The lawyer. Didn't do it. There is no position from him, Your Honor. There has never been an evidentiary hearing granted. Never did have an evidentiary hearing. No, Your Honor. Okay. But if you look at what he actually said. He's never given an affidavit? He's never been asked? No, Your Honor. But what's so frustrating here is if you look at what he actually argued. He argued Taylor versus Tainter. He argued that the statute did not abrogate common federal law. He made all the right arguments. What we're saying is he didn't add the three additional words. It would be a violation of due process to convict him of this now because the statute What lawyers do all the time in courtrooms or make tactical decisions? That's what they do. That's the reason that we have all these Sixth Amendment claims. We give them so much effort. This isn't a tactical decision. He forgot to add the most important part, and that's to make it not just about statutory interpretation but to make it about the Constitution. That's the problem. And if you look at the Court of Appeals on the direct appeal, one of the footnotes that they put in there is that he actually raised this very issue that we're saying should have been raised. He raised it on direct appeal. The Court of Appeals disregarded it and said they couldn't consider it because it wasn't raised at the trial court. So all we're saying is that he didn't use the words violate a due process. And it does get a little more complicated if you start throwing in the words retroactivity when you're trying to make an argument. But if you're saying that you can't apply this statute to Mr. Collins, if you convict Mr. Collins, everybody else after us is going to know that they can't do this. But as far as Mr. Collins, he doesn't know, and it's not fair, it's not a due process to convict him. And we cite the two cases that talk about that. They did exactly that in Massachusetts and the Tenth Circuit on a case out of New Mexico. So what we're saying is all he had to do was make the additional argument, would have preserved it for appeal. That is not a tactical decision. He was making all the right arguments in the first place, he just didn't take that one extra step. And I think counsel was ineffective for failing to do that. But you certainly can't call it a tactical decision. You might want to argue about whether it was reasonable or not reasonable, but if you call it a tactical decision, it makes it basically untouchable. And if it's untouchable, it might as well be a procedural bar. So if the attorney does anything and he says, well, I had a tactical reason for doing it, then we just dismiss it completely. And we cited the cases that talk about you can't water down the tactical decision to nothing but just a mild form of acquiescence, just say whatever you want to do is fine as long as you call it tactical or strategic. You can't do that. And that's not what Strickland requires. And that's why we say this is an unreasonable application of Strickland versus Washington. To say that the only reason we're dismissing this claim, we're not saying the claim doesn't have merit. We're not saying that you couldn't win if this claim was advanced. What we're saying is, this is the Supreme Court talking, what we're saying is that because Mr. Collins said he didn't abduct this individual, you lose. Well, again, repeatedly throughout this process, counsel had argued both sides of the coin. As a matter of fact, he spent more time talking about if you ignore or don't believe the defense evidence and believe the commonwealth's evidence, then Taylor applies, then the statute's not specific enough, et cetera, et cetera. He just simply didn't say due process. And it's a shame for him to suffer these consequences based on three little words. Let me ask this of you again. I know there's a difference of review, but if we were to look at the issue and say it's not a due process violation, you would lose, wouldn't you? Correct. And I see I'm out of time. Was there anything else? You answer all the questions. Thank you very much. Thank you, Your Honor. Appreciate it.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker